# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ATHENS DIVISION

| | |
|---|---|
| GREAT DANE LIMITED PARTNERSHIP, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STOUGHTON TRAILERS, LLC AND )<br>NEWCOURT, INC., )<br>)<br>Defendants. ) | Civil Case No. 3:08-CV-089 |

## STOUGHTON TRAILERS, LLC'S RESPONSE BRIEF REGARDING CLAIM CONSTRUCTION

### *INTRODUCTION*

Stoughton's opening Claim Construction brief thoroughly set forth the bases for its proposed constructions. Those constructions enjoy ample support from the claim language, the written description, and the figures. Great Dane's brief has not demonstrated any error in Stoughton's positions. By contrast, Great Dane's own proposed constructions run afoul of the rules of claim construction and lack support in the intrinsic evidence. Accordingly, Stoughton respectfully requests that the Court adopt the constructions proffered by Stoughton.

**A.  Overhang.**

Like one who "doth protest too much," Great Dane vigorously tries to keep this Court from interpreting "overhang," thereby proving that it should indeed be construed. Great Dane's contention that the term is not at issue is simply wrong. The term "overhang" is an element of every single asserted claim in the two patents in suit[1]. Stoughton has asserted, and intends to

---

[1] The terms "edge" and "stepped-down flange" are likewise necessary for construing the prior art. The same arguments as to the relevance of those terms applies here.

prove, that those claims are invalid in light of the prior art. The first step in any invalidity analysis is, of course, claim construction. *See, e.g., Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003). Only after the claims are construed can a jury consider the evidence and determine whether the prior art includes every element of the asserted claims. Stoughton will proffer evidence that the claimed "overhang portion" exists in the prior art, where it served the same purpose and had the same structure. The jury therefore needs to be instructed as to its construction so it understands the term.

Moreover, Great Dane seeks an injunction in this case. Should Great Dane prevail, the injunction would have to specify what the patents cover so as to articulate with precision what others may not make, use, or sell. *See, e.g., International Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316 (Fed. Cir. 2004) (An injunction which "lack[s] specific terms and a reasonably detailed description of the acts sought to be restrained" fails to satisfy the requirements of Rule 65). To provide the requisite detail, courts may incorporate a claim construction into an injunction. *See, e.g., Kemin Foods L.C. v. Pigmentos Vegetales Del Centro SA,* 369 F. Supp. 1075, 1084 (S.D. Iowa 2005) (*citing International Rectifier, supra.*). Stoughton has already informed Great Dane that it will be producing panels having a facer and a backer of the same size, within manufacturing tolerances. To the extent Great Dane seeks an injunction, the injunction must be clear enough to inform Stoughton whether or not its future products are in compliance.

The *McKesson* case relied upon by Great Dane does not preclude construction of the term. In that case, Judge Camp of the Northern District made the unassailable point that the Local Rules contemplate the exchange of contentions so only the "claim terms relevant to the case" will be construed. *McKesson Info. Solutions LLC v. Epic Sys. Corp.,* 495 F. Supp. 2d 1329, 1335 (N.D. Ga. 2007). This can "prevent[] a waste of time addressing issues that do not

assist in resolving the case." *Id.* The Court specifically noted that claim construction was necessary for the ultimate issue of invalidity. *Id.* Nothing in the case suggests that construction is inappropriate when the parties actually dispute a term, as they clearly do here, even if the purpose were merely for clarification of an injunction. "Overhang," "edge," and "stepped down flanges" are all claim terms that are "relevant to [this] case." Their construction will "assist in resolving the case." Accordingly, they should be construed.

With respect to the actual claim construction, Great Dane's proffered interpretation simply reads out the term "overhang." Great Dane contends that the overhang portion must merely "extend beyond the edge." If that were the case, however, the term "overhang" would be redundant because all that would be necessary to claim is a facer that "extends beyond the edge of said backer." By adding "overhang portion" as the specific structure that extends beyond the edge of the backer, the patentee must have intended something more.

Moreover, Great Dane's construction injects vagueness, rendering the term less clear, by using the phrase "extend beyond." Does "extend beyond" mean by any amount whatsoever, so that a facer one micron longer than a backer would infringe? If so, all panels wherein the facer and backer were designed to be the same size would infringe because manufacturing tolerances are not perfect.

Great Dane's construction ignores the functionality inherent in the word "overhang." The dictionary definition of "overhang" contains the concept of projection - - not merely any minimal extension. The *Merriam-Webster Collegiate* dictionary, as well as the on-line version, define "overhang" as "a projection of the roof or upper story of a building beyond the wall of the lower part." (Exs. A, B). The *American Heritage Dictionary* defines "overhang" as "a projecting part, such as an architectural structure or a rock formation." (Ex. C). The *Merriam-*

3

*Webster Online Dictionary* further has an illustration of an architectural overhang, with the numeral 1 pointing to that structure. (Ex. B).



Similarly, the specification uses the term functionally, in that the overhang portion is capable of serving some function, whether it is the protection provided by the folding over or the attachment function shown in Figure 17.

Stoughton's proposed construction, wherein the overhang portion has sufficient shape and dimension to be capable of folding over or attaching, is fully supported by the claim language, the specification, and the extrinsic dictionary evidence. Great Dane's interpretation, which has no dimension whatsoever, is both vague and unsupported by the specification or the usage of the term "overhang."

**B.    Edge.**

Plaintiff's proposed construction of the term "edge" flouts plaintiff's own argument that the plain meaning of a term should govern. The patents do not use "edge" vaguely to describe "a boundary where a thing begins or ends." Rather, edge is employed to identify the *end* of the backer panel and the geometric relationship between that end and the overhang portion of the facer. Stoughton thoroughly explained, in its opening brief, why Stoughton's proposed

definition is correct and incorporates that argument herein as if fully set forth. Great Dame's position lacks merit.

Great Dane suggests that the use of "an" to modify "edge" establishes that the term implies "one of numerous edges" that are not necessarily "at the end of the panel." (Brief, p. 26). Great Dane is wrong, as illustrated by the very figures it uses for support. Great Dane relies heavily on Figures 21 and 22. However, the description of Figure 21 actually defeats Great Dane's position. In column 9 of the '493 patent, beginning with line 26, the specification notes:

> Referring to FIG. 21 . . . [t]he upper panel's facer overhang folds outward away from its backer to receive the lower panel. The lower panel facer folds over the upper edge of its backer but does not wrap around to the opposite side. A notch formed along the backer's opposite side receives the upper panel's folded-out overhang.

'493 patent, col. 9, ll. 26-32 (emphasis added). Shown below is Figure 21, annotated according to the foregoing description:



Consistent with Stoughton's proposed construction, Fig. 21 illustrates an overhang folding over an edge – at the *end* of the panel. The notched area in this particular embodiment is not an "edge" as that term is used in the patent.

Similarly, Figure 22 fails to support Great Dane's improperly broad and vague construction. The figure illustrates an embodiment in which the backers (item 36) share one common facer (item 35), and the post's (item 50) flanges receive the backers which are merely notched as in Figure 21.



FIG. 22

The embodiment contains an overhang which extends beyond the respective edges of the two backers (36) shown. Because the overhang is used for accepting fastener 34 and connecting to the post 50, however, it is not "folded over" either edge. It nonetheless extends beyond the same edges or ends of the backers themselves – not "something on the backers." The figures simply do not support Great Dane's contention that "edge" refers to "a place something on the backer begins or ends."

### C. <u>Vertical Edge.</u>

Great Dane's proposed construction is similarly flawed in that it improperly stretches the meaning of edge to include the beginning or end of any surface on the backer. As explained above, Great Dane's position is flatly wrong. The remaining differences between the parties' constructions, *i.e.*, dealing with how to capture the modifier "vertical," appear to be distinctions without a difference. Stoughton's definition merely attempted to keep the meaning simple by

referring to the point at which the vertical and horizontal planes meet. If, instead, it is clearer to define "vertical" as "perpendicular to the ground" or, preferably, "perpendicular to the trailer's floor," then Stoughton has no objection to that portion of the definition. It strongly disagrees, however, that "edge" can broadly refer to any surface on the backer.

### D. Edge Surface.

Great Dane does not address the parties' dispute regarding "edge surface." As shown in Figure 7, the "edge surface" is the vertical surface at the end of a backer panel. Once again, Great Dane improperly attempts to broaden this term by defining it as "a surface where a thing on the backer begins or ends . . . ." No figure, and no portion of the written description, supports such a broad definition. Indeed, Great Dane so distorts the claim language as to render the term nearly devoid of meaning. Using "edge surface" to refer to any "thing on the backer" fails to provide any meaningful metes and bounds of the invention. Great Dane's proposed definition would preclude the patents from serving their public notice function because no one could predict, based on the patents' disclosures, that an "edge surface" is the surface where any "thing" on the backer begins or ends. *See, e.g.*, *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 117 S. Ct. 1040, 1051 (1997) (claims serve both a definitional and a notice function).

### E. Recess/Area Depressed.

Great Dane's own argument about the term "receive" defeats its position regarding the "recess" and the "area depressed." The parties' dispute centers on whether the recess or depressed area must exist prior to the time the panel is attached to the post. Stoughton explained in its opening brief why the claim language at issue compels an interpretation that requires the recess to be pre-formed. Great Dane's opening brief confirms that Stoughton's proposed interpretation is, in fact, correct.

As Great Dane recognizes, the recess must "receive," or "accept," the head of the fastener. The recess simply cannot perform this function if it does not exist before the fastener is attached. Figure 8 of the patent confirms this interpretation. It plainly illustrates a recess with a particular shape that is ready to receive or accept a fastener. If the recess did not need to be pre-formed, then no figure illustrating the recess without a fastener in it would exist.

The term "receive" is particularly inapt for the situation where the act of installing a rivet fastener may incidentally depress the panel slightly. The rivet is not "received" into a recess in that situation, but instead *causes* a nominal deformation into a previously non-recessed surface. Such a deformation does not meet the definition of "recess" used in the patents because it cannot receive the fastener.

Contrary to Great Dane's argument, Stoughton's proposed construction does not transform the claims into method claims or unduly narrow their scope. Indeed, Stoughton's construction relies on the plain language of the claims – which Great Dane repeatedly contends should govern the entire claim construction. The patentee purposefully used the word "receive" to explain how the fastener and the panel attach. Now, however, Great Dane is attempting to back-pedal from that plain language to capture structures that do not fit the plain meaning of the claim terms.

### F. Covers.

Great Dane misreads the intrinsic evidence regarding "covers." The parties now explicitly agree that the plain and ordinary meaning of "covers" is to overlay, and does not necessarily imply "complete" coverage. Great Dane incorrectly argues that it acted as its own lexicographer in the patent and somehow disclaimed the plain meaning with a more specific one. It did not. When it wished to convey the concept of complete, or "entire" coverage, it used that clarification in the patent. "It should be understood that …the steel sheet **may entirely cover**

both sides of the backer." (Col. 6 lines 24-27 (emphasis added).) The drafter of the patent did not disclaim the ordinary meaning of cover, or he would not have modified the term cover with "entirely" when that was the concept he wished to convey. That "cover" may be modified with "entirely" and "partially" in certain usages does not impart any special meaning to the word used alone.

Great Dane, in its brief, does not address the parties' dispute relating to Claim 23 of the '018 patent: "Said plurality of liner panels include a plurality of discrete said backers sharing a common said facer, so that said common facer *covers* said vertical posts." As stated in the opening brief, Stoughton contends that the term means "a single metal facer covers all the posts such that the facer extends the entire length of the side wall inner surface and covers more than one backer." Great Dane asserted in its chart, but did not argue in its brief, that the "common facer" only need cover "more than one" post. Based on the arguments Stoughton offered in its opening brief, and the fact that Great Dane did not offer any support for its position, Stoughton respectfully requests that its construction be adopted.

### G. Stepped-Down Flanges.

Great Dane offers nothing to contradict any of the language of Stoughton's definition, and simply states that the phrase "stepped down flanges can be understood by the Court and potential jurors." Stoughton respectfully disagrees, at least as to the jurors, since the term is not one used in common parlance. Stoughton submits that a clarifying definition is required. Stoughton's proposed construction of stepped-down flanges merely defines the concept of flange for the jury. "The flanges which are arranged in steps" is a restatement of the exact language of the term, clarified by the more descriptive (but entirely accurate) "are ribs or rims that extend the length of the post, away from the front of the post, and form a structure, such as a recess, for the

9

attachment of the liner panels." Because this clarification is both entirely consistent with the claim language and will assist the trier of fact, it should be adopted by the Court.

H.      Adjacent.

Great Dane's proposed construction of "adjacent" is simply too broad. The concepts of "close to" and "nearby" are not the same as adjacency. Rather, items are adjacent when they are next to each other such that no structure of the same kind (*i.e.*, no other facers, backers, panels) come between them. Both Figures 6 and 7 illustrate adjacent panels. Figure 6 shows panels that abut each other, and Figure 7 shows panels that abut an intervening post. In both embodiments, the panels are next to each other. Moreover, the written specification describes liner panels as adjacent even when a "vertical post [is] disposed between" them. '493 patent, col. 10, lines 15-20. Finally, the extrinsic evidence notes that "adjacent . . . always implies absence of anything of the same kind in between." *Merriam-Webster's Collegiate Dictionary* (Ex. A to Stoughton's Opening Brief).

Great Dane's proffered construction is inconsistent with the intrinsic and extrinsic evidence because it is overinclusive. Structures can be "close to" and "nearby" each other even if they are not adjacent or next to each other. Thus Great Dane's construction would improperly broaden the scope of the claims at issue far beyond that dictated by the written description, the specification, the plain meaning of the claim language, and the extrinsic evidence.

Dated this 23rd day of October, 2009.

          **HALL, BOOTH, SMITH & SLOVER, P.C.**

          By:    s/ Shaun Daugherty
              Shaun Daugherty, Esq.
              Ga. Bar No. 205877
              1180 West Peachtree NW
              Atlantic Center Plaza, Suite 900
              Atlanta, GA 30309
              Phone: (404) 954-5000
              Fax:    (678) 539-1568
              SDaugherty@hbss.net

          **MICHAEL BEST & FRIEDRICH LLP**

          By:    /s Jonathan H. Margolies
              Jonathan H. Margolies, SBN 1000452
              Katherine W. Schill, SBN 1025887
              100 East Wisconsin Avenue, Suite 3300
              Milwaukee, WI 53202-4108
              Phone: (414) 271-6560
              Fax:    (414) 277-0656
              jhmargolies@michaelbest.com
              kwschill@michaelbest.com

          Attorneys for Defendant
          Stoughton Trailers, LLC