# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ATHENS DIVISION

| | |
|---|---|
| GREAT DANE LIMITED PARTNERSHIP, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Case Number 3:08-cv-89<br>) |
| STOUGHTON TRAILERS, LLC and NEWCOURT, INC., | )<br>)<br>) |
| Defendants. | ) |

## PLAINTIFF GREAT DANE LIMITED PARTNERSHIP'S
## RESPONSIVE CLAIM CONSTRUCTION BRIEF

**Table of Contents**

|     |     | Page |
| --- | --- | --- |
| I.  | INTRODUCTION | 1 |
| II. | LEGAL STANDARDS FOR CLAIM CONSTRUCTION | 1 |
| III. | ANALYSIS OF DISPUTED CLAIM TERMS | 3 |
|     | A. Recess or Area Depressed | 3 |
|     | B. Received | 5 |
|     | C. Overhang Portion | 6 |
|     | D. Edge | 7 |
|     | E. Covers | 8 |
|     | F. Stepped-Down Flanges | 9 |
|     | G. Adjacent | 9 |
| IV. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Cases**                                                   **Page**

*Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361 (Fed. Cir. 2007) ............................... 4

*Beckson Marine, Inc. v. NFM, Inc.,* 292 F.3d 718 (Fed. Cir. 2002) ............................................... 4

*Brookhill-Wilk 1, L.L.C., v. Intuitive Surgical, Inc.*, 326 F.3d 1215 (Fed. Cir. 2003) ............... 2, 9

*Curtiss-Wright Flow Control Corp. v. Z7J Techs. GmbH*, 563 F.Supp. 2d 1109
   (C.D. Cal. 2007) ........................................................................................................................ 2

*Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048 (Fed. Cir. 1994) ................... 4

*Gillette Co. v. Energizer Holdings, Inc.,* 405 F.3d 1367 (Fed. Cir. 2005) ...................................... 1

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111
   (Fed. Cir 2004) ......................................................................................................................... 2

*Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323 (Fed. Cir. 2001) ..................... 4

*Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050 (Fed. Cir. 1989) ..................................... 2

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985 (Fed. Cir. 1999) ......................... 4

*Laitram Corp. v. NEC Corp.*, 163 F.3d 1342 (Fed. Cir. 1998) .................................................. 2, 7

*Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 116 S.Ct. 1384,
   134 L.Ed.2d 577 (1996) ........................................................................................................... 1

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc),
   *cert. denied*, 126 S. Ct. 1332 (2006) ................................................................................ 2, 6, 7

*Vanguard Prods. Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370 (Fed. Cir. 2000) ..................... 3

*Vitronics Corp. v. Conceptronics*, *Inc.* 90 F.3d 1576 (Fed. Cir. 1996) .......................................... 1

BDDB01 5884205v1

## I. INTRODUCTION

On September 25, 2009, Great Dane Limited Partnership ("Great Dane") and Defendants Stoughton Trailers, LLC ("Stoughton") and Newcourt, Inc. ("Newcourt") (collectively "Defendants") submitted their respective Opening Claim Construction Briefs, proposing definitions for certain terms and phrases contained in claims of U.S. Patent No. 6,652,018 ("the '018 Patent") and U.S. Patent No. 6,923,493 ("the '493 Patent") (collectively "the Patents-in-Suit"). As anticipated, Defendants proposed definitions fail to follow the plain and ordinary meaning of the disputed terms and improperly read portions of the specification's written description into the claims as additional limitations. As such, and for the reasons outlined below and in Great Dane's Opening Claim Construction Brief, Great Dane requests that the Court reject Defendants' proposed definitions, and adopt constructions for the disputed terms contained herein.

## II. LEGAL STANDARDS FOR CLAIM CONSTRUCTION

The construction of claims is a legal issue to be resolved by the Court.[1] In performing this duty, the Court must begin by looking at the intrinsic record.[2] The most important piece of intrinsic evidence is the claim language.[3] Indeed, as Defendants state in their Opening Claim Construction Brief, "the Court's focus must 'begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to particularly point out and distinctly claim the subject matter which the patentee regards as his invention.'"[4]

---

[1] *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)
[2] *Gillette Co. v. Energizer Holdings, Inc.,* 405 F.3d 1367,1370 (Fed. Cir. 2005)
[3] *Vitronics Corp. v. Conceptronics, Inc.* 90 F.3d 1576 (Fed. Cir. 1996)
[4] Defendants' Opening Claim Construction Brief p. 4, citing *Gillette,* 405 F.3d at 1370.

1

While a patent's specification may offer additional guidance as to the meaning of claim language, the Court must be cautious not to limit the scope of the claim with language from the specification. Indeed, the Federal Circuit has "consistently adhered to the proposition that courts cannot alter what the patentee has chosen to claim as his invention, that limitations appearing in the specification will not be read into claims, and that interpreting what is meant by a word in a claim 'is not to be confused with adding an extraneous limitation appearing in the specification, which is improper.'"[5] While Defendants recognize this well-settled legal principal in their Opening Claim Construction Brief, many of their arguments appear aimed at culling additional limitations from the specification, and pulling them into their proposed definitions.[6]

Extrinsic evidence, such as dictionaries, may also be considered, but only if ambiguities remain after careful consideration of the intrinsic record.[7] Any reliance on dictionary definitions, however, may not contradict the intrinsic evidence.[8]

Finally, the Court should approach all of this evidence with a predisposition toward interpreting the terms consistently with their plain and ordinary meanings.[9] The Court may depart from the plain and ordinary meaning of claim terms only when the words chosen by the patentee are so unclear the scope of the claim cannot be ascertained, or when the patentee has acted as his or her own lexicographer, clearly setting forth a non-ordinary definition of a term.[10]

---

[5] *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1348 (Fed. Cir. 1998) (quoting *Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1053 (Fed. Cir. 1989)).
[6] Defendants' Opening Claim Construction Brief pp. 4-5.
[7] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc), *cert. denied*, 126 S. Ct. 1332 (2006) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir 2004)).
[8] *Curtiss-Wright Flow Control Corp. v. Z7J Techs. GmbH*, 563 F.Supp. 2d 1109, 1120-21 (C.D. Cal. 2007)(citing *Phillips,* 415 F.3d at 1319-20)).
[9] *Phillips*, 415 F.3d at 1312.
[10] *See Brookhill-Wilk 1, L.L.C., v. Intuitive Surgical, Inc.*, 326 F.3d 1215, 1220 (Fed. Cir. 2003).

## III. ANALYSIS OF DISPUTED CLAIM TERMS

The Parties have a dispute as to the proper construction of twenty-seven (27) terms or phrases used in the claims of the Patents-in-Suit. However, all of the parties' disputes ultimately turn on the proper construction of seven key terms or phases: (1) *recess* or *area depressed*, (2) *received*, (3) *overhang*, (4) *edge*, (5) *covers*, (6) *stepped-down flange*, and (7) *adjacent*.

A. <u>Recess or Area Depressed</u>

The parties agree that a *recess* or *area depressed* is an indentation or recess. Defendants, however, assert that the claims require the *recess* to be pre-formed prior to the time the panel is attached to the post.[11] The addition of this specific limitation, however, is unsupported by the language of the claims, represents an improper attempt to use selections from the specification as an additional claim limitation, and would limit the asserted **apparatus** claims with **method** type limitations; a practice contrary to well-established legal precedent.

Defendants support their insertion of a pre-formed limitation by stating, with no supporting authority, that the use of active verbs in the claims, such as "receive" or "define," necessitate that the *recess* or *area depressed* be pre-formed.[12] This argument is factually inaccurate and an improper attempt to limit **apparatus** claims with **method** claim restrictions. It is well-settled that apparatus and method claims are distinct ways of claiming patentable inventions.[13] An apparatus claim identifies a novel product. A method claim identifies a means of creating, or a process, as the invention.[14] Court's have been clear that, unless "the patentee has made clear that the process steps are an *essential part* of the claimed invention," it is improper to

---

[11] Defendants' Opening Claim Construction Brief, p. 13.
[12] Defendants' Opening Claim Construction Brief, p. 13.
[13] *Vanguard Prods. Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370, 1372 (Fed. Cir. 2000).
[14] *Vanguard*, 234 F.3d at 1372.

3

limit an apparatus claim with method type restrictions.[15]  Because the claims-at-issue are apparatus claims, they claim the final product, not the method or timing by which it was made. As such, a *recess* may "receive" the head portion of a fastener, or the backer may "define" an *area depressed*, regardless of how or when the *recess* or *area depressed* was created (even if created at the time the liner panel was attached to a post).  Any restriction directed to the method in which the *recess* is manufactured, and not the *recess* itself, is an improper attempt to limit an apparatus claim with method restrictions, and cannot be accepted by the Court.

        As additional support for their argument that the *recess* must be pre-formed, Defendants cite to excerpts of the specification.[16]  The cited portions of the specification, however, do not necessitate that any *recess* be pre-formed.  First, one of the possible means for creating a recess or area depressed described in the specification, "crushing," could be achieved by the force the fastener head **at the time the liner panel is attached to the post**.  Second, and more importantly, requiring elements of an embodiment described in the specification to be a limitation on the claims is clearly improper.  As the Federal Circuit has articulated on numerous occasions, and Defendants acknowledge in their Opening Brief, specifications are designed to describe the inventor's preferred embodiments, not limit the scope of the invention.[17] "[A]lthough the specifications may well indicate that certain embodiments are preferred, particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments."[18]

---

[15] *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1375 (Fed. Cir. 2007).
[16] Defendants' Opening Claim Construction Brief, pp. 13-14.
[17] *See Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 723–24 (Fed. Cir. 2002); *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001).
[18] *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994); see also *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989–92 (Fed. Cir. 1999); *Interactive Gift*, 256 F.3d at 1340.

Because Defendants proposed definition for *recess* and *area depressed* is unsupported by the intrinsic record and runs counter to well-settled Federal Circuit precedent, Great Dane requests that the Court reject Defendants' requirement that a *recess* or *area depressed* be pre-formed prior to the time the liner panel is attached to the post. Instead, Great Dane requests that the Court define a *recess* or *area depressed* as an indentation.

B.   Received

Three disputed claim phrases recite or refer to a fastener being *received* in the recess.[19] In the definitions submitted to the Court in the Parties' Joint Claim Construction Statement, Defendants assert that the term received requires the head of a fastener to "reside below the inward surface of the panel." Interestingly, Defendants choose not to address this issue in their Opening Claim Construction Brief.

While it is unclear if Defendants will continue to pursue this argument, it is important to note that such a limitation is unsupported by, and, in fact, runs counter to, the intrinsic record. The claims themselves make no reference to a fastener head "residing below the inward surface of the panel."[20] The specification, however, describe fastener heads (1) extending out from; (2) at the surface of; or (3) below the surface of the panel. [21] In later sections, the specification describes a "scuff band" being received in a recess, and, again, makes clear that the "scuff band" may sit at the surface, or out from, the surface of the liner panel.[22] Because a definition of *received* that requires the head of a fastener to reside below the surface of the liner runs counter to the intrinsic evidence, Great Dane requests that the Court reject this construction. As such, and because the jury will readily understand the term *received*, Great Dane asks that the

---

[19] Parties' Joint Claim Construction Statement Pursuant to Local Patent Rule 6.3 (Dkt. No. 38), Exhibit A page 4.
[20] Ex. B, '493 Patent, Claim 16
[21] *Id*. (emphasis added).
[22] Ex. A, '018 Patent, Col. 4, l. 53- Col. 5, l. 12;

5

Court decline to define the term *received*. However, in the event the Court believes a definition is necessary, Great Dane asks that the Court define *received* as accepting the head of the fastener.

C. Overhang Portion

The Patents-in-Suit use the phrase *overhang portion* in more than eighteen different claims; identifying an *overhang portion* that covers an edge, ends at an edge surface, wraps around an edge surface, folds away from an edge surface, folds out from an edge surface, folds away from an edge surface, etc…[23] Most informative, however, is that the first time this phrase is used, the independent claim, the claim simply describes an *overhang portion* that "extends beyond an edge of [the] backer."[24]

Defendants propose a definition requiring the *overhang portion* be long enough to fold over the edge of the backer. This definition is in direct conflict with the language of the claims, and ignores the patentees' clear choice to claim both specific variations of the facer *overhang*, as well as the more general claim of a facer longer, by no specific length, than the backer to which it is near. [25]

The Federal Circuit made clear in *Phillips v. AWH Corp.* that when, as is the case here, a dependent claim adds additional limitations to an independent claim, there is a presumption that the additional limitations are not part of the independent claim.[26] As noted above, Claim 1 of the '018 Patent, the independent claim, claims a facer *overhang* longer than the backer, but has no additional requirements regarding the length or use of the overhang.[27] In the subsequent dependent claims, the patentee adds specific configuration limitations to the

---

[23] Ex. A, '018 Patent, claims 2, 3, 4, 7, 24, and 32.
[24] Ex. A, '018 Patent, claim 1.
[25] Ex. A, '018 Patent, claims 1, 2, 3, 4, 7, 24, and 32.
[26] *Phillips*, 415 F.3d at 1314-15.
[27] Ex. A, '018 Patent, claim 1.

6

*overhang*, such as an *overhang* that folds over the edge of the backer.[28] Because the first, independent use of *overhang* is claimed generally, and subsequent limitations are added in dependent claims, it must be presumed that the additional limitations are not part of the independent claim.[29]

Defendants' proposed definition incorporates an additional limitation from the dependent claims (an *overhang* long enough to fold over the edge of the backer) and makes it a requirement of all claims, including the independent claim in which this requirement was expressly excluded by the patentee. This construction is an improper attempt to "alter what the patentee has chosen to claim as his invention."[30] As such, Great Dane requests that the Court reject Defendants' proposed definition and construe *overhang portion* to require a portion of the facer to extend beyond an edge of the backer.

D. <u>Edge</u>

The parties' have two disputes regarding the term *edge*. First, is whether the *edge*, must be at the end of the backer, or whether an *edge* may be present anywhere a surface ends on the backer. While an edge may exist at the end of the backer, the Patents-in-Suit also envision backer surfaces that create edges at other locations on the backer panel. Figures 21 and 22 of the Patents-in-Suit illustrate this point.[31] In figure 21 the backer has an edge at the end of the backer, plus an additional *edge* inset from the end of the backer to accept a particular facer embodiment.[32] In



FIG. 21



FIG. 22

---
[28] Ex. A, '018 Patent, claims 1, 2, 3, 4, 7, 24, and 32.
[29] *Phillips*, 415 F.3d at 1314-15.
[30] *Laitram*, 163 F.3d at 1348.
[31] 'Ex. B, 493 Patent, figures 21 and 22.
[32] 'Ex. B, 493 Patent, figure 21.

7

figure 22 there is an additional *edge* inset from the end of the backer, to accept a particular vertical post attachment.[33] In both figures, an *edge* is a place where a surface on the backer begins or ends, but not necessarily where the backer itself begins or ends.

In addition, the parties dispute the vertical nature of the phrase *vertical edge*. Defendants assert that the *vertical edge* is not, in fact, *vertical*, but is instead the boundary "between the vertical and horizontal surfaces."[34] This definition not only deviates from the plain and ordinary meaning of *vertical*, it expressly excludes it. For example, Figure 11 shows a front view of liner panel embodiment. According to Defendants, the boundary between the vertical and horizontal surfaces should be considered the *vertical edge*, even though it is not *vertical*. Defendants have offered no evidence to support a construction of vertical that deviates so greatly from its plain and ordinary meaning. As such, Great Dane requests that the Court reject Defendants construction, and define *vertical edge* as "a boundary where a surface on the backer begins or ends that is generally perpendicular to the ground on which the trailer is located."



### E. Covers

The parties agree that construction of *covers* should include the term "overlay." However, Defendants stop there and ignore the patentees clearly expressed intent to distinguish between surfaces that are less than completely covered, using the phrase "partially covers," and surfaces that are completely covered, using the term *covers*.[35] By repeatedly clarifying that a

---

[33] 'Ex. B, 493 Patent, figure 22
[34] Parties' Joint Claim Construction Statement Pursuant to Local Patent Rule 6.3 (Dkt. No. 38), Exhibit A pages 6-8
[35] Ex. A, '018 Patent - Column 6, Lines 18-22; Column 7, Lines 13-20; '493 Patent, claim 3

8
BDDB01 5884205v1

surface that is less than fully covered is partially covered, the inventors have expressed an intent for the term *covers*, by itself, to mean fully or completely covered.[36] By stating that something that is less than fully covered is "partially" covered, the patentees have clearly expressed an intent for *covers* to mean fully or completely covered. As such, Great Dane proposes that covers be construed as "completely overlays."

F. Stepped-Down Flanges

The phrase *stepped-down flanges* is a visually descriptive phrase and, unlike Defendants' proposed definition, can be understood by the Court and potential jurors. Defendants attempt at further clarification, "[t]he flanges which are arranged in steps are ribs or rims that extend the length of the post, away from the front face of the post, and form a structure, such as a recess, for the attachment of the liner panels," does nothing to offer guidance to the meaning of the phrase and only adds confusion and unnecessarily complicates issues. As such, Great Danes requests that the Court offer no additional construction for *stepped-down flanges*.

G. Adjacent

The parties' final dispute relates to the term *adjacent*. While both sides agree that *adjacent* implies proximity or nearness, Defendants' argue the term also requires the exclusion of items between *adjacent* objects (in this case liner panels).[37] In their Opening Claim Construction Brief, Defendants acknowledge that the Patents-in-Suit describe *adjacent* liner panels that are close, but may have something placed between them.[38] To rectify the inconsistency between their definition and the intrinsic record, Defendants carve out a specific exception for support

---

[36] *See Brookhill-Wilk*, 326 F.3d at 1220.
[37] Defendants' Opening Claim Construction Brief, pp. 16-17.
[38] *Id.*

9

posts, which are clearly shown and described as being disposed between *adjacent* liner panels.[39] In support of their argument, Defendants offer the analogy of houses that are "next to" each other "even though [a] lawn and driveway are disposed between them."[40] Carried to its logical conclusion, this analogy does not support a construction of *adjacent* that allows for one specific item, but no others, to be disposed between *adjacent* items. As an initial matter, Defendants own analogy recognizes multiple items (a lawn and driveway) placed between the *adjacent* houses. Taken further, would Defendants' houses still be "next to" each other if, in addition to the lawn and driveway, a fence, tree, and dog house were disposed between them?

The intrinsic record clearly identifies *adjacent* liner panels that are "close to" each other, but may have something placed between them. Defendants offer nothing more than a failed analogy to argue that, in addition to nearness, *adjacent* requires the exclusion of objects between adjacent liner panels. As such, Great Dane asks that the Court reject Defendants' proposed definition and state that *adjacent* means "close to or nearby."

## IV. CONCLUSION

Defendants proposed definitions improperly limit the scope of the claims at issue by construing the disputed terms and phrases to include details found in the specification of the Patents-in-Suit. Great Dane asks that the Court reject this approach, and, unless a clear intent to the contrary is expressed in the Patents-in-Suit, give the disputed terms and phrases their plain and ordinary meaning.

---

[39] *Id.*
[40] *Id.*

Respectfully submitted,


 */s/ Brandon S. Judkins*
R. Trevor Carter
Brandon S. Judkins
BAKER & DANIELS LLP
300 North Meridian Street
Suite 2700
Indianapolis, IN 46204

John M. Tatum
HUNTER, MACLEAN, EXLEY & DUNN
200 East St. Julian Street
Post Office Box 9848
Savannah, Georgia 31412

## **CERTIFICATE OF SERVICE**

This is to certify that on the 23rd day of October, 2009, the foregoing document was electronically filed via the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

    Mark A. Barber
    Shaun M. Daugherty
    HALL, BOOTH, SMITH & SLOVER, P.C.
    1180 West Peachtree NW
    Atlantic Center Plaza, Suite 900
    Atlanta, GA 30309

    Sumner C. Rosenberg
    Lawrence K. Nodine
    J. Scott Anderson
    Jeffrey H. Brickman
    BALLARD SPAHR ANDREWS & INGERSOLL, LLP
    999 Peachtree Street, Suite 1000
    Atlanta, GA 30309

    Jonathan H. Margolies
    MICHAEL BEST & FRIEDRICH LLP
    100 E. Wisconsin Avenue, Suite 3300
    Milwaukee, WI 53202

 */s/ Brandon S. Judkins*
*Attorneys for Great Dane Limited Partnership*

11