IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| GREAT DANE LIMITED PARTNERSHIP, | * | |
| Plaintiff, | * | |
| vs. | * | CASE NO. 3:08-CV-89 (CDL) |
| STOUGHTON TRAILERS, LLC, | * | |
| Defendant. | * | |

O R D E R

Plaintiff Great Dane Limited Partnership ("Great Dane") alleges that Defendant Stoughton Trailers, LLC ("Stoughton") willfully infringed two of Great Dane's patents, U.S. Patent Nos. 6,652,018 ("the '018 patent") and 6,923,493 ("the '493 patent"). Stoughton contends that the undisputed facts establish that even if Stoughton did infringe the two patents, the infringement was not willful. Stoughton therefore seeks summary judgment as to Great Dane's claim for willful infringement. For the reasons set forth below, Stoughton's Motion for Partial Summary Judgment as to Great Dane's willful infringement claim (ECF No. 77) is denied.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to

defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to Great Dane, the record reveals the following. Unless otherwise noted, the facts are undisputed.

The '018 patent was issued on November 25, 2003, and the '493 patent was issued on August 2, 2005 (collectively, "Patents"). The Patents, which are owned by Great Dane, both relate to the design of a cargo trailer. Both Patents are entitled "Trailer with Side Wall Having Laminate Panel." Stoughton knew of each Patent shortly after it was issued.

At some point in 2008, United Parcel Service ("UPS") asked Stoughton to bid on a job to make cargo trailers containing liner panels made of plywood covered with galvanized steel. Stoughton hired Newcourt, Inc. to make the liner panels. McCarthy Decl. Ex. 3, Court Dep. 23:4-20, July 15, 2010, ECF No. 85-3. Kenneth Wahlin, who was president of Stoughton during the timeframe relevant to this

2

action, knew that Great Dane had patents related to a liner panel made of plywood and galvanized steel. Before becoming president of Stoughton, Wahlin was a patent attorney. Wahlin is no longer licensed to practice law, and he is no longer registered to practice before the United States Patent and Trademark Office.

Wahlin "looked at" the Patents to determine whether he thought they were valid and whether he thought Stoughton infringed them. Wahlin Dep. 13:11-17, June 29, 2010, ECF No. 98. Based on his review, Wahlin concluded that the Patents were not valid and that Stoughton did not infringe the Patents. *Id.* at 13:21-22. Specifically, Wahlin concluded that the Patents were invalid due to anticipation and obviousness, based on his review of prior art. *Id.* at 15:19-16:3. Wahlin also concluded that there "may be a construction where [the Patents] are determined to be valid" but that "if that construction fits, then it can't cover [Stoughton's] product." *Id.* at 14:10-18. Wahlin did not document these opinions in writing, but he did communicate the opinions to Stoughton's in-house counsel and its engineering department. It is undisputed that after Great Dane filed this action, Stoughton obtained an opinion of outside counsel that the Patents were invalid and that Stoughton's products did not infringe the Patents if they were valid.

Wahlin testified in his deposition that he analyzed the Patents "[s]ometime before [Stoughton] quoted [the UPS] job" and built the

trailers for UPS. *Id.* at 15:6-10. During his deposition, Wahlin was asked specifically when he reached his opinion regarding non-infringement, and he replied that it was before Stoughton bid and built the allegedly infringing trailers. *Id.* at 14:6-15:10. The parties did not point to any testimony regarding the timing of the invalidity analysis, but Wahlin's non-infringement decision appears to have been related to his invalidity analysis, *id.* at 14:10-18, suggesting that Wahlin's testimony is that he analyzed both potential defenses before Stoughton engaged in any alleged infringement.

Great Dane contends that there is a fact issue as to the timing of Wahlin's invalidity analysis and that a reasonable factfinder could conclude that the analysis did not take place until after Great Dane filed its lawsuit on October 14, 2008, or at least after Stoughton quoted the UPS job and built the allegedly infringing trailers. The parties did not point the Court to any evidence of exactly when Stoughton bid on the UPS job or built the allegedly infringing trailers.

Wahlin based his invalidity opinion primarily on a document that he referred to as "the Met-L-Wood document." Wahlin Dep. 15:25-16:3. Wahlin received the Met-L-Wood document from Stoughton's engineering department, which received the document from Mel Court of Newcourt. *Id.* at 16:4-11. Wahlin also received the Met-L-Wood document directly from Court. *Id.* at 16:6-7. Great Dane contends that the

4

undisputed evidence demonstrates that Court did not send the prior art material to Stoughton until after Great Dane filed its lawsuit on October 14, 2008. *E.g.*, Pl.'s Resp. to Def.'s Mot. for Partial Summ. J. 3, ECF No. 84. The record establishes, however, that Court—or someone from his office—sent the Met-L-Wood document, along with a Newcourt document, to a Stoughton employee on April 9, 2008. Def.'s Reply Br. in Supp. of Def.'s Mot. for Partial Summ. J. [hereinafter Def.'s Reply] Ex. A, Court Dep. 61:23-62:19, July 15, 2010, ECF No. 94-1; Schill Decl. Ex. 3, Fax from M. Court to W. Brewster, Apr. 9, 2008, ECF No. 77-5 (enclosing Newcourt edge option sheet and Met-L-Wood edge option sheet and requesting that documents be forwarded to Bill Wahlin of Stoughton's engineering department). What the present record does not show is when Wahlin received the Met-L-Wood document from either his engineering department or from Court.

The Met-L-Wood document described products made for the trailer industry, specifically panels "made of wood material and a metal." Wahlin Dep. 18:10-12. Wahlin talked with Court about the Met-L-Wood document, and he learned that the Met-L-Wood panels were sold as door panels. *Id.* 18:13-24. Wahlin also talked with Burt Urbanick, a retired salesman who sold the Met-L-Wood panels. *Id.* 19:14-25. Urbanick confirmed that the Met-L-Wood panels had been sold as door panels, but not liner panels, which form the sides of a cargo trailer. *Id.* Although the Met-L-Wood panels were sold as door

5

panels and not liner panels, Wahlin concluded that one skilled in the art would know that the Met-L-Wood door panels could also be used as sidewall liner panels in a cargo trailer with predictable results. Though Great Dane may disagree with this conclusion, Great Dane does not appear to dispute that it is the conclusion Wahlin reached.

Wahlin also concluded that the Met-L-Wood panels were sold during the 1970s, before the Patents were applied for. Wahlin did not base this conclusion on his conversation with Urbanick; Wahlin and Urbanick did not discuss the timeframe during which the Met-L-Wood panels were sold. *Id.* at 21:6-10. Wahlin based this conclusion on a discussion he had with Court, as well as a document that Court sent to Stoughton along with the Met-L-Wood document. *Id.* at 21:11-22. The document is a Newcourt document that depicts edge options for trailer doors; it is dated "8/24/71." *E.g.*, Schill Decl. Ex. 3, Fax from M. Court to W. Brewster, Apr. 9, 2008, ECF No. 77-5 (enclosing Newcourt edge option sheet and Met-L-Wood edge option sheet and requesting that documents be forwarded to Bill Wahlin of Stoughton's engineering department); *accord* Schill Decl. Ex. 7, Met-L-Wood edge option sheet & Newcourt edge option sheet, ECF No. 77-9. Though Wahlin did not know the connection between the Newcourt document and the Met-L-Wood document, he "took them together" because Court had sent them together. Wahlin Dep. 22:18-21. Based on Wahlin's conversation with Court, Wahlin understood that Newcourt had

6

made door panels shown on the Newcourt document for Met-L-Wood. Wahlin Dep. 22:22-23:8.

Stoughton does not seriously dispute that Wahlin's conversation with Court about the prior art was an important step in Wahlin's invalidity analysis because Wahlin relied on that conversation to reach his conclusion regarding the timing of the Met-L-Wood door panel sales. Great Dane pointed to evidence that Court did not correspond with Stoughton regarding prior art until *after* the lawsuit was filed. McCarthy Decl. Ex. 3, Court Dep. 23:4-20, July 15, 2010, ECF No. 85-3 (testifying that he was "out of the loop" after Newcourt received a purchase order for liner panels from Stoughton); *Id.* at 24:21-27:19 (discussing conversations between Court and Stoughton employees regarding prior art and testifying that those conversations did not occur until after Great Dane filed this lawsuit). Specifically, Court testified that he discussed the Patents with Stoughton employees, including Wahlin, *after* Great Dane filed this lawsuit. *Id.* at 25:1-22. Court also testified that he told Stoughton that Newcourt "had a lot of prior art" and that he obtained the prior art and sent it to Stoughton. *Id.* at 26:11-21. Finally, Court testified that he sent the material to Stoughton after Great Dane filed its lawsuit:

> Q And to the best of your recollection , you sent that material to Stoughton . . . after you were served?

A Yes, sir.

    Q Okay. And you had not sent any of that material to them before you were served?

    A No, sir.

*Id.* at 27:13-19

Stoughton counters that there is evidence that Court sent the prior art to Stoughton in April of 2008. Schill Decl. Ex. 3, Fax from M. Court to W. Brewster, Apr. 9, 2008, ECF No. 77-5 (enclosing Newcourt edge option sheet and Met-L-Wood edge option sheet and requesting that documents be forwarded to Bill Wahlin of Stoughton's engineering department). Court did not, however, recall whether he or someone from his office sent the April 2008 fax, and though he believed it was sent in response to a Stoughton request, Court did not recall the circumstances under which it was requested. Def.'s Reply Ex. A, Court Dep. 61:23-62:19. Based on Court's testimony, a reasonable factfinder could conclude that Wahlin and Court did not discuss the prior art or the timing of the prior art sales until after Stoughton engaged in the allegedly infringing activities.

## DISCUSSION

"[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371

8

(Fed. Cir. 2007) (en banc). If the "threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.*

The "'objective' prong of *Seagate* tends not to be met where an accused infringer relies on a reasonable defense to a charge of infringement." *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010). For example, in *Spine Solutions, Inc.*, the Federal Circuit Court of Appeals reversed the denial of a motion for judgment as a matter of law of no willfulness because the accused infringer raised substantial questions as to the obviousness of the patent at issue. *Id.* at 1319-20. Similarly, in *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1336-37 (Fed. Cir. 2009), the Federal Circuit affirmed the grant of the infringer's motion for judgment as a matter of law of no willfulness because the alleged infringer "presented a substantial question of noninfringement." *See also Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1374 (Fed. Cir. 2008) (affirming finding of no willful infringement where claim term was susceptible to reasonable construction under which alleged infringer's products did not infringe). In contrast, the Federal Circuit affirmed the denial of a motion for judgment as a matter of law of no willful

9

infringement in *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 859-60 (Fed. Cir. 2010) because the defendant's product was designed to perform the same methods as the plaintiff's software, which the defendant knew practiced the patent at issue, and because the defendant did not cease its infringing activity or attempt a design-around.

Stoughton contends that the objective prong of *Seagate* is not met here because Stoughton reasonably relied on the defense of invalidity.[1] Specifically, Stoughton argues that it was not objectively reckless because, prior to bidding and building the allegedly infringing trailers, Wahlin analyzed the Patents and determined that they were invalid. Great Dane stresses that Wahlin was not a licensed patent attorney when he reached his conclusions regarding the Patents. As the Federal Circuit in *Seagate* emphasized, though, "there is no affirmative obligation to obtain opinion of counsel." *In re Seagate*, 497 F.3d at 1371. Therefore, the fact that Wahlin was no longer a practicing attorney when he rendered his opinions does not mean that Stoughton was objectively reckless in relying on those opinions.

---

[1] Though Wahlin also opined that Stoughton did not infringe any valid claim of the Patents, the parties did not fully address the non-infringement defense in their briefs, and the Court cannot tell from the present record whether there is a substantial question of non-infringement.

10

Stoughton could, however, be considered objectively reckless if it proceeded to bid and build the allegedly infringing trailers without first assessing whether Stoughton's trailers might infringe Great Dane's Patents, of which Stoughton was aware. Based on the present record, genuine fact disputes exist as to whether Stoughton proceeded with bidding and building the allegedly infringing trailers *before* performing a sufficient analysis to determine whether Stoughton had a reasonable invalidity defense. The timing of the invalidity opinion matters because "timely consultation with counsel may be evidence that an infringer did not engage in objectively reckless behavior." *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1313 (Fed. Cir. 2010). If, however, Stoughton did not evaluate its potential defenses as to the Patents until after it began bidding and manufacturing the allegedly infringing trailers—despite knowing about the Patents—then such a course of action could suggest objective recklessness.

Wahlin's finding of invalidity, particularly his conclusion regarding the timeframe during which the prior art was offered for sale, was based on his discussion with Court. Based on the present record, viewed in the light most favorable to Great Dane, a reasonable factfinder could conclude that Wahlin did not discuss the prior art with Court before Stoughton bid and produced the allegedly infringing trailers. Accordingly, there is a genuine fact dispute as

11

to whether Stoughton was objectively reckless with regard to assessing the potential defense of invalidity. Stoughton is therefore not entitled to summary judgment on the issue of willfulness.

CONCLUSION

For the reasons set forth above, the Court denies Stoughton's Motion for Partial Summary Judgment as to Great Dane's willful infringement claim (ECF No. 77).

IT IS SO ORDERED, this 28th day of January, 2011.

                                      S/Clay D. Land
                                         CLAY D. LAND
                             UNITED STATES DISTRICT JUDGE